IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| HOLLI LILLIBRIDGE, | ) Case No. 4:19-cv-00390-SMR-HCA |
| | ) |
| Plaintiff, | ) |
| | ) ORDER ON DEFENDANTS' MOTION |
| v. | ) FOR SUMMARY JUDGMENT |
| | ) |
| JUAN TEJADA, BRIAN BATTERSON, | ) |
| MICHAEL TUPPER, individually and in their | ) |
| official capacities, and CITY OF | ) |
| MARSHALLTOWN, | ) |
| | ) |
| Defendants. | ) |

Plaintiff Holli Lillibridge brings this suit against the above-captioned defendants for events arising out of the execution of a search warrant by Defendant Detective Juan Tejada. She alleges Tejada used excessive force when he seized her cellular phone pursuant to a search warrant, resulting in her sustaining injuries to her upper arm. Defendants move for summary judgment on the excessive force claim, in addition to her claims for assault, battery, abuse of process, negligence, and abuse of process. [ECF No. 46].

I. BACKGROUND

A. *Factual Background*[1]

Plaintiff was attending her husband's criminal trial at the Marshall County Courthouse ("Max building") on May 10, 2019, when she was summoned into the hallway by a court security

---

[1] The facts in this Section are drawn from Defendants' Statement of Undisputed Material Facts. [ECF No. 46-3]. As Defendants correctly point out in their Reply brief, Plaintiff failed to file a response to their statement of facts or file an appendix of materials on which she relies in her resistance to summary judgment, as required by the local rules. *See* LR 56(b). Thus, all the facts advanced by Defendants are deemed admitted and uncontested. *Id.*; *accord* Fed. R. Civ. P. 56(e)(2)–(3).

1

officer. [ECF No. 46-3 ¶ 5]. Once in the hallway, Plaintiff was directed to Tejada, a detective with the Marshalltown Police Department, who was standing in a nearby waiting room. *Id.* ¶ 6. She initially protested that she was in the middle of her husband's trial but Tejada assured her that it would not take long. *Id.* ¶¶ 8–9. Plaintiff told Tejada she would like to speak to her lawyers. *Id.* ¶ 10. Tejada responded that was "fine", but he was just going to read the search warrant to her. *Id.*

As he began reciting the search warrant[2] to her, Plaintiff reached into her pocket for her cellular phone. *Id.* ¶ 13. She immediately began manipulating the phone's screen which led Tejada to order her to stop using it because "he was there for" her phone. *Id.* ¶ 14. Tejada then reached for the phone, causing Plaintiff to turn away from him and switch her phone to her other hand. *Id.* ¶ 18. After Plaintiff failed to obey his multiple commands to stop using her phone, Tejada grabbed her by the arm and removed the phone from her hand. *Id.* ¶¶ 20–21. Once Tejada had the phone, Plaintiff told him that she had money and an identification in a pocket on her phone case. *Id.* ¶ 22. Plaintiff continued to reach for the phone but Tejada told her to not touch the phone and provided her with the identification and money. *Id.* ¶ 28. He rejected her requests to let her lock her phone, gave her a copy of the search warrant, and informed her that he was finished if she did not wish to speak with him regarding the warrant. *Id.* ¶¶ 28–29. Plaintiff concluded the interaction by telling Tejada she was going to file charges against him because she had a bruise and could hardly move her arm. *Id.* ¶ 30. She told him she had no idea he was serving a search warrant on her. *Id.* ¶¶ 31–32.

---

[2] The warrant was issued to search for evidence related to a harassment investigation involving allegations that Plaintiff took photographs at the residence of the Marshall County Attorney.

Plaintiff followed up on the incident the next day when she reported the events to the Ames Police Department, where she spoke with Officer Dan Walter. *Id.* ¶ 37. During her interview with Walter, Plaintiff recounted the events inconsistently with footage captured from Tejada's body cam. Specifically, she told Walter that she informed Tejada about her money and identification in her phone case prior to handing over the phone. [ECF No. 46-2] (Ex. C Dan Walter Body Camera Footage at 3:18–3:23). It was at that point, according to her recounting of the incident to Walter, that Tejada grabbed her arm and then her phone from her hands. *Id.* at 3:23–3:35. Walter concluded the interview by telling Plaintiff that his department did not have jurisdiction over the incident but assured her of the integrity of the Marshalltown Police Department and vowed to follow up on the matter personally with the Marshalltown police chief. *Id.* at 4:47–6:08.

Around May 16, 2019, a few days after her interview with Walter, Plaintiff met with Captain Brian Batterson of the Marshalltown Police Department, along with her attorney, to file a complaint against Tejada. [ECF No. 46-3 ¶ 47]. The interview was audio recorded. *See* [ECF No. 46-2]. Plaintiff provided a written statement during this interview with her recollection of the events. [ECF No. 46-2 at 19]. This statement omitted similar key details as her interview with Walter, including her use of the phone and her physical resistance prior to Tejada forcibly removing the phone from her hand. *Id.* While speaking with Batterson, she repeated her false claim that she informed Tejada about her money and identification before the phone was taken from her. [ECF No. 46-2] (Ex. E. Audio from Batterson Interview at 4:37–4:44).

Following the interview, Batterson doubted the veracity of Plaintiff's statements and contacted the Muscatine County Attorney for an opinion. [ECF No. 46-3 ¶ 61]. The county attorney responded that Plaintiff should be charged with a false report to law enforcement. [ECF No. 46-2 at 19]. Batterson did just that, and a criminal complaint was filed against Plaintiff on

June 4, 2019. *Id.* at 23. Plaintiff stood trial and was convicted of a single count of a false report of an indictable offense to a public entity. *Id.* at 27.

### B. Procedural Background

Plaintiff filed her initial Complaint in this Court on December 4, 2019, [ECF No. 1], and followed that up with a twelve-count Amended Complaint on August 31, 2020. [ECF No. 18]. Upon Defendants' motion, the Court dismissed several claims. [ECF Nos. 22; 40]. Six claims now remain: excessive force (Count II); battery (Count IV); assault (Count V); abuse of process (Count VI); respondeat superior liability against the City of Marshalltown (Count VIII); and negligence (Count XII).

On June 1, 2021, Defendants filed this Motion for Summary Judgment on the remaining claims. [ECF No. 46]. Plaintiff resisted the Motion on July 20, 2021. [ECF No. 56]. Defendants filed their reply brief on July 29, 2021, and requested oral argument on the Motion on August 27, 2021. [ECF Nos. 59; 60]. However, the Court has determined that it can be decided without the benefit of oral argument. *See* LR 7(c) ("A motion will be decided without oral argument unless the court orders otherwise.").

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Paulino v. Chartis Claims, Inc.*, 774 F.3d 1161, 1163 (8th Cir. 2014). "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." *Amini v. City of*

*Minneapolis*, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 252 (1986)).

To preclude the entry of summary judgment, a plaintiff must make a sufficient showing on every essential element of its case for which it has the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The evidence is viewed "in the light most favorable to the nonmoving party," which includes drawing all reasonable inferences in that party's favor. *Pedersen v. Bio-Med. Applications of Minn.*, 775 F.3d 1049, 1053 (8th Cir. 2015) (quoting *Johnson v. Wells Fargo Bank, N.A.*, 744 F.3d 539, 541 (8th Cir. 2014)). But "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of the judge." *Anderson*, 477 U.S. at 255. "Generally, the issue of whether a particular intent existed is a question of fact for the jury." *Yellen v. Hake*, 437 F. Supp. 2d 941, 952 (S.D. Iowa 2006) (quoting *In re K-tel Intern., Inc. Sec. Litig.,* 300 F.3d 881, 894 (8th Cir. 2002)).

*B. Defendants' Motion for Summary Judgment*

Defendants seek summary judgment on all six remaining claims, arguing they all fail as a matter of law. Plaintiff resists dismissal of the claims, contending that the force used by Tejada was unreasonable and excessive and her right to be free from such force was clearly established at the time. She does concede, however, that her claims for respondeat superior and negligence, Counts VIII and XII respectively, should be dismissed.

1. Count II: Excessive Force

In Count II of her Amended Complaint, Plaintiff claims that Tejada violated her constitutional rights when he used excessive force to execute the search warrant on her cellular phone at the Max building. She alleges that she suffered extensive bruising on her arm, requiring medical attention, and this injury was the result of excessive force by Tejada. Defendants dispute

that Tejada used excessive force, asserting that the force used on Plaintiff was reasonable and necessary under the circumstances.

Claims for constitutionally-excessive force against government officials fall under the purview of the Fourth Amendment's prohibition against unreasonable seizures. *Tennessee v. Garner*, 471 U.S. 1, 7 (1985). The reasonableness standard of the Fourth Amendment applies not only to "when a seizure is made, but also how it is carried out." *Id.* Force is excessive—and therefore constitutionally impermissible—when it is objectively unreasonable under the particular circumstances. *See Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009). This reasonableness determination must be made consistent with the perspective of a reasonable officer on the scene "rather than the '20/20 vision of hindsight.'" *Carpenter v. Gage*, 686 F.3d 644, 649 (8th Cir. 2012) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The factors to be considered by a court when evaluating the objective reasonableness of the use of force are: (1) severity of the crime at issue; (2) the immediate threat a suspect poses to the safety of the officer and others; and (3) whether the suspect is resisting arrest or attempting to flee. *Graham*, 490 U.S. at 396.

Claims for constitutional violations against state and local government officials acting under color of law are actionable under 42 U.S.C. § 1983. *See Alexander v. Hedback*, 718 F.3d 762, 766 (8th Cir. 2013). The elements required for a claim under § 1983 are: (1) the defendant deprived the plaintiff of a right secured by the federal constitution or federal law; (2) the defendant acted under color of state law; (3) the conduct caused the plaintiff's damages; and (4) the amount of damages. *Tilson v. Forrest City Police Dep't*, 28 F.3d 802, 807 (8th Cir. 1994). A government official may defend against a § 1983 suit by asserting a defense of qualified immunity. *White v. Pauly*, 137 S. Ct. 548, 551 (2017). Under the doctrine of qualified immunity, an official may only

be held liable for unconstitutional conduct that is "clearly established law." *Id.* at 552 (citation omitted). The law must not only be clearly established, but also the constitutional violation must be particularized to the facts of the case. *Id.* (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

Plaintiff insists that the force was excessive because Tejada was investigating a simple misdemeanor; she posed no safety threat to Tejada and others; and she was not resisting or fleeing the execution of the warrant but instead simply wanted her lawyers present, who were inside a nearby courtroom at the time.

The potential criminal charge at issue—harassment—is a non-violent crime and a simple misdemeanor under Iowa law. *See* Iowa Code § 708.7(4). There is also no evidence that Plaintiff posed any danger to Tejada or other people in the courthouse on that day either. However, her actions after Tejada began to recite the search warrant are relevant to whether Tejada was reasonable in his use of force.

The video captured from Tejada's body camera is illustrative, as well as dispositive, of Plaintiff's excessive force claim. Shortly after Tejada began reciting the search warrant to her, Plaintiff removed her cell phone from her pocket and began to manipulate the screen. Tejada immediately ordered her to stop doing so, to which she responded by switching her phone to her other hand and using her body to shield him from it. It was at this point that Tejada grabbed Plaintiff's arm to spin her back toward him so he could seize the phone from her hand. Once he gained control of the phone, Tejada released his grip.

Further, the video does not support Plaintiff's assertion that she simply wanted to retrieve her money and identification before handing over the phone. First, she does not mention she needs anything from her phone after she removed it from her pocket. Also, she does not appear to be

attempting to take those items out of her phone case because she has the phone facing up with her hands on the screen rather than accessing the pocket on the back side of the phone. And finally, it is unclear how she would know that Tejada was there for her phone. Tejada had only begun to recite the search warrant when Plaintiff removed her phone, and had not told her the purpose of his visit.

Simply put, the force used by Tejada to secure Plaintiff's cell phone pursuant to a search warrant was reasonable and necessary in these circumstances. The search warrant authorized the search of her phone to determine if it contained evidence related to a harassment investigation of a state prosecutor—specifically the accusation that Plaintiff took photographs of the prosecutor's private residence. [ECF No. 46-2 at 6]. It was entirely reasonable for Tejada to be concerned about the destruction of evidence by Plaintiff when, after he began reading the search warrant to her, she immediately removed her phone from her pocket and manipulated the screen, and failed to cease when he ordered her to stop, even after telling her "that's what I'm here for." [ECF No. 46-2] (Detective Juan Tejada body camera video at 4:37–4:44).

Law enforcement officers serving a search warrant have authority to use reasonable force, up to and including handcuffing, to effectuate its execution. *See Michigan v. Summers*, 452 U.S. 692, 705 (1981) (permitting law enforcement officers to seize a person while executing a search warrant). Here, Tejada was seeking to facilitate the "orderly completion of the search" by ensuring Plaintiff did not flee and did not destroy any evidence on her phone. *Id.* at 703. The force he used, grasping Plaintiff's upper arm[3] for a few seconds, was modest and temporary. Tejada's force was

---

[3] Defendants claim in their motion that Tejada's body cam shows he grabbed Plaintiff's shirt sleeve and not her arm as she claims. It is not clear from the video, and because the motion is on summary judgment, and not dispositive to the analysis, the Court will not resolve the dispute. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (observing "[t]he weighing of the evidence" is not proper by a court on a summary judgment motion).

both reasonable and necessary and therefore not constitutionally excessive. Defendants' Motion for Summary Judgment on Count II is GRANTED.

2. Count IV: Battery and Count V: Assault

Plaintiff's claims in Counts IV and V, for battery and assault, fail for the same reason as her excessive force claim: Tejada's use of force was reasonable in this instance. Iowa law provides that an officer will not be liable for an assault and battery when using force "he or she is authorized to employ." *Lawyer v. City of Council Bluffs*, 240 F. Supp. 2d 941, 955 (S.D. Iowa 2002). Whether use of force is authorized in a particular situation is dictated by Iowa Code § 804.8, which "establishes an 'objective reasonableness' standard for use of force by arresting officers." *McElree v. City of Cedar Rapids*, 372 F. Supp. 3d 770, 794 (N.D. Iowa 2019); *see also* Iowa Code § 804.8 ("A peace officer, while making a lawful arrest, is justified in the use of any force which the peace officer reasonably believes to be necessary to effect the arrest."). Iowa courts apply a similar objective reasonableness standard to use of force by a law enforcement officer. *Parrish v. Dingman*, 912 F.3d 464, 469 (8th Cir. 2019). Consistent with the Court's determination that not only was Tejada's use of force not excessive, but was also reasonable and necessary to carry out his professional obligation to execute the search warrant, this claim must fail. Defendants' Motion for Summary Judgment on Counts IV and V is GRANTED.

3. Count VI: Abuse of Process

In Count VI, Plaintiff accuses Tejada and Batterson of intentionally misusing the criminal legal process against her by preparing and filing a criminal complaint for a false report to a public entity. "To prove a claim of abuse of process, a plaintiff must show (1) use of the legal process, (2) in an improper or unauthorized manner, and (3) that damages were sustained as a result of the

abuse." *Stew-Mc Dev., Inc. v. Fischer*, 770 N.W.2d 839, 849 (Iowa 2009) (citing *Gibson v. ITT Hartford Ins. Co.*, 621 N.W.2d 388, 398 (Iowa 2001)). The improper manner in which a defendant uses the legal process must be "primarily for an impermissible or illegal motive." *Id.*

The only evidence identified by Plaintiff in her resistance to the motion for summary judgment is the fact that Tejada was permitted to view Batterson's interview with Plaintiff and her attorney. *See* [ECF No. 56-1 at 11]. Plaintiff falls far short of producing sufficient evidence to establish that the legal process was used against her for an impermissible or illegal motive. Rather, it is clear that Tejada and Batterson filed a criminal complaint against Plaintiff because they believed there was probable cause that she committed a crime.

The impermissible or improper motive argument is further weakened by two important facts. First, the existence of a proper motive is supported by the opinion provided by the Muscatine County Attorney, who told Batterson that Plaintiff should be charged with false report to law enforcement after Batterson requested his advice. [ECF No. 46-2 at 19]. Second, Plaintiff was in fact found guilty of a false report to law enforcement, after a jury trial. [ECF No. 46-2 at 27]. Plaintiff's claim for abuse of process fails as a matter of law. Defendants' Motion for Summary Judgment on Count VI is GRANTED.

4. Count VIII: Respondeat Superior and Count XII: Negligence

As noted above, Plaintiff concedes that her claim for respondeat superior liability against the City of Marshalltown in Count VIII fails and should be dismissed. She also acknowledges that Count XII for common law negligence cannot survive summary judgment either. Thus, Defendants' Motion for Summary Judgment on Count VIII and Count XII is GRANTED.

III. CONCLUSION

For the reasons discussed above, Defendants' Motion for Summary Judgment is GRANTED. This case is DISMISSED.

IT IS SO ORDERED.

Dated this 10th day of November, 2021.

_____
STEPHANIE M. ROSE, JUDGE
UNITED STATES DISTRICT COURT